IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ANTOVIS STRINGER, #207517, ) | Civil Action No. 3:06-3108-JFA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JAMES DAUGHTERY, A/K/A JIM ) | |
| DORRIETY, DIRECTOR/ADMINISTRATOR ) | |
| OF GREENVILLE COUNTY DETENTION ) | |
| CENTER; NFN MARTIN, NURSE, HEAD OF ) | |
| MEDICAL FOR GREENVILLE COUNTY ) | |
| DETENTION CENTER; NFN SUMMERS, ) | |
| NURSE ASSISTANT HEAD OF MEDICAL FOR ) | |
| GREENVILLE COUNTY DETENTION CENTER; ) | |
| NFN HOLLISTER, HEAD OF ) | |
| MAINTENANCE AND SANITATION FOR ) | |
| GREENVILLE COUNTY DETENTION ) | |
| CENTER, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| _____ ) | |

    This action was filed by the pro se Plaintiff on October 31, 2006.[1] At the time of the alleged incidents, Plaintiff was a pretrial detainee at the Greenville County Detention Center ("GCDC"). He is currently incarcerated at the Broad River Correctional Institution of the South Carolina Department of Corrections ("SCDC"). Defendants filed a motion for summary judgment on May 10, 2007. Because Plaintiff is proceeding pro se, he was advised on May 15, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff did not respond to the Roseboro order. On June 27, 2007 the undersigned

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. On July 11, 2007, Plaintiff submitted a letter in which he merely states "I respectfully request that this action continue on my behalf."

## DISCUSSION

Plaintiff alleges that Defendants were negligent in failing to provide him with proper medical care. Complaint at 3-4. Plaintiff requests compensatory damages, punitive damages, and that GCDC change its medical protocol in diagnosing staph infections. Complaint at 5. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff suffered no constitutional deprivation as to medical negligence or negligence by the detention center staff; (2) Plaintiff has not established a claim against Defendants based on state law; (3) Plaintiff received appropriate and timely medical care for the signs and symptoms he presented; (4) Defendants are entitled to qualified immunity; (5) Defendants cannot be held liable under a theory of supervisory liability or respondeat superior;[2] and (6) Defendants had no personal involvement with Plaintiff that gives rise to liability under § 1983.

    1.    Medical Claims

Plaintiff alleges that Defendants were negligent as to his medical needs. Specifically, he claims that Defendants failed to provide him with proper and timely medical attention for "boils"

---

[2]The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

2

which occurred on his buttocks, genitals, chest, and chin. Plaintiff claims that nurses kept prescribing the same antibiotics which did not work. He alleges that he suffered pain, scarring, and keloids as a result of Defendants' negligence. Plaintiff also claims that staff were negligent in failing to control staph infection at the GCDC.[3] Defendants contend that Plaintiff has not asserted a constitutional claim, his claims for negligence do not rise to the level of a constitutional deprivation, and any such claim fails because Plaintiff has not shown that detention officers were deliberately indifferent to any of his serious medical needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[4] The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of

---

[3] Viewing the complaint in the light most favorable to this pro se plaintiff, he may be attempting to assert a claim for deliberate indifference to his medical needs.

[4] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

> how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment."  Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994).  The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  This approach comports best with the text of the Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm

> might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Tracy Krein, the Medical Administrator of the GCDC, states that Plaintiff was booked into the GCDC on May 10, 2005. He received an evaluation by medical staff on March 11, 2005, at which time he reported a skin rash and migraine headaches. Plaintiff was examined by Nurse Practitioner ("NP") Telano on March 21, 2005. NP Telano noted that Plaintiff's skin had defined borders with central clearing. She assessed Plaintiff with tinea corporis and prescribed antifungal cream.

On April 4, 2005, Plaintiff was examined by Nurse Martin for his complaint that he had a boil on his buttocks. Nurse Martin prescribed two antibiotics (Clindamycin and Duricef) and Motrin. On April 12, 2005, Nurse Navalle examined Plaintiff and continued antibiotic therapy. Plaintiff was examined by Dr. Sherman on April 13, 2005, who noted that Plaintiff had "an open wound with some seropurulent exudate" and that antibiotics appeared to have caused partial resolution of Plaintiff's condition. Dr. Sherman's plan was to treat Plaintiff with Neosporin dressings and Duricef. On May 17, 2005, Dr. Sherman rechecked Plaintiff's left side wound and

noted that it was healing well with no signs of infection. Nurse Brewington evaluated Plaintiff on June 25, 2005, and noted large red raised hard areas with some yellowish thick drainage over the back of his abdomen. Plaintiff was prescribed antibiotics and pain medication and instructed to keep the areas covered and clean. On June 27, 2006, Nurse Brewington noted that the Plaintiff had an area on his right thigh that was red, raised, and warm. She also noted that Plaintiff refused antibiotics. On June 29, 2005, Nurse Brewington noted that Plaintiff was already on antibiotics.

On July 20, 2005, Dr. Sherman examined Plaintiff, noted a ganglion cyst of Plaintiff's left wrist, and prescribed Motrin for pain. On July 24, 2005, Nurse Brewington examined Plaintiff, noted a large red raised area on his inner thigh, and started him on two antibiotics and pain medication. Nurse Brewington placed Plaintiff on a second round of antibiotics on August 3, 2005. She evaluated Plaintiff again on August 16, 2005. On August 26, 2005, Nurse Brewington noted that Plaintiff had another boil. She continued his antibiotics and pain medication. Medical staff examined Plaintiff on September 7, 2005, and prescribed two antibiotics and pain medication. Krein states that Plaintiff submitted no more medical requests concerning skin infections or boils after that time, but he submitted a request on January 18, 2006, reflecting he had keloids that bled often. Nurse Thomas evaluated Plaintiff on January 24, 2006, noted an alteration in skin integrity, and referred him to the sick call list. On January 31, 2006, NP Eastergard noted that Plaintiff had a pre-existing neck keloid and referred him to the surgery clinic for evaluation. On March 14, 2006, Plaintiff was evaluated by a physician who noted that Plaintiff's keloid could be electively removed after incarceration. Krein states that Plaintiff did not report any further problems with skin infections or keloids during the remainder of his detainment at GCDC (he was released from the GCDC on September 18, 2006). Krein Aff.

6

Krein also states that in August/September of 2005, it was discovered that staph infection might be a potential health care issue for inmates at the GCDC and that protocols to deal with inmates who were diagnosed with MRSA (a type of antibiotic resistant staph infection) were developed. She has submitted a copy of GCDC's standing orders and protocol for suspected MRSA infections. There is no indication in her affidavit, however, that Plaintiff was ever diagnosed with an MRSA infection. Krein Aff.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants actions or inactions rose to the level of a constitutional violation.

Additionally, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. at 106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995)(applying Daniels v. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for

7

negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

    2.    <u>Immunity</u>

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly

8

established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

        3.       <u>State Law Claims</u>

Plaintiff appears to assert claims for medical negligence under South Carolina law. Defendants contend that they are entitled to summary judgment because Plaintiff failed to allege gross negligence, he has not provided any expert testimony, he has not shown any deviation from the applicable standard of care, and he received appropriate and timely medical care for the signs and symptoms he presented. As Plaintiff fails to show that Defendants violated his rights under federal law (as discussed above), only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 21) be granted.

                                    Respectfully submitted,

                                    s/Joseph R. McCrorey
                                    United States Magistrate Judge

September 27, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**